■    In the Matter of JEROME REISS, Appellant, v. MORTIMER J. ABRAMOWITZ, as Superintendent of Schools, Board of Education, Union Free School District No. 7, Great Neck, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR, inter alia, to direct respondents, the Board of Education of Union Free School District No. 7 and its Superintendent of Schools, (1) to furnish petitioner's children and all other children in said school district, without charge, such instructional supplies as have been listed by teachers and officials as being necessary for maintaining the educational program and (2) to cease and desist in their efforts to impose and collect a special tax from petitioner and the parents of said other school children for instructional supplies, petitioner appeals from a judgment of the Supreme Court, Nassau County, dated February 7, 1972, which dismissed the proceeding. Judgment affirmed, without costs. On three separate occasions during the spring and summer of 1971 the qualified voters of Union Free School District No. 7 defeated a proposed budget submitted to them by the respondent Board of Education. As a result of such action, the board, as required by law, became obligated to operate on a contingency or austerity budget (Education Law, § 2023). Under such a budget the board is authorized to levy a tax upon the qualified voters as if such tax had been approved by the voters, but only for a sum estimated necessary for "ordinary contingent expenses", not for all the expenditures set forth in the proposed budget. On September 3, 1971 the board sent a letter to the parents of school children informing them that as a consequence of the defeat of the proposed budget certain specified items "which are a vital part of the school's instructional program must legally be eliminated and cannot be fundable by means of the school tax". Those specified items were: "Instructional supplies (kindergarten to 12th grade); Textbooks (kindergarten to 6th grade only); New library books

(kindergarten to 12th grade)." Thereafter an assessment for new library books was dropped by the board. In other words, the defeat of the proposed budget meant that the afore-mentioned specified educational items could not be furnished to school children free of charge. The board in its letter went on to state that, while it "could ask that parents themselves purchase for students items used in these * * * areas * * * because of the myriad of items, the economics of bulk purchase, and complexity of needed distribution," it would purchase the necessary educational items and charge the parents in accordance with a schedule of charges set forth in the letter. The authority for such action by the board is found in subdivision 5 of section 701 and the amended provisions of subdivision 2 of section 703 of the Education Law. Petitioner, a parent of children attending schools in this school district, refused to pay the applicable charges assessed against him in accordance with the September 3, 1971 letter. Instead, he commenced this proceeding, essentially seeking to direct the respondents to furnish his children and all the other children in the school district, without charge, such instructional supplies as have been listed by teachers and officials as being "vital" or "necessary" for maintaining the educational program for such children. Petitioner argues that such instructional supplies so designated should be considered "ordinary contingent expenses" within the meaning of section 2023 and accordingly must be furnished to school children within the district free of charge. In our opinion petitioner's argument goes too far. "Ordinary contingent expenses" have been defined as those expenditures specifically authorized by statute, legal obligations of the district, and those items necessary to maintain the educational program, preserve school property and assure the health and safety of students and staff (see 7 State Educ. Dept. Rep. 153, Formal Opinion of Counsel, No. 213). Illustrative of the items deemed to be included in the latter category are: instructional supplies for teachers' use; maintenance of school facilities; and materials used in classes of students where uniformity is essential to the program or to preserve health and safety (i.e., dangerous chemicals for a chemistry class). Clearly, the phrase "ordinary contingent expenses" was intended to limit expenditures under an austerity budget to those of a greater necessity than instructional supplies for students. Indeed, not even textbooks for children in classes below the 7th grade are considered necessary to the extent that such textbooks are an "ordinary contingent expense" (see Education Law, § 703, subd. 2). While the distribution of instructional supplies to school children free of charge is no doubt desirable, it cannot, in our opinion, be considered as "ordinary contingent expenses". We agree with petitioner, however, that certain dangerous chemicals used by his son in a chemistry class should be considered an "ordinary contingent expense." In view of the aforementioned opinion of the State Department of Education and the strong indication in the record that the respondent Board of Education has been advised by the Commissioner of Education to consider dangerous chemicals and certain other items as "ordinary contingent expenses", we feel that the petition, seeking mandamus-type relief, was properly dismissed, since petitioner can seek redress from the Commissioner (see Education Law, § 2024). In short, we feel that petitioner's claim that certain instructional supplies should be considered "ordinary contingent expenses", and therefore exempt from parental funding, tenders an issue which is particularly within the province of the Commissioner to determine. With respect to petitioner's contention on appeal that the charge levied by respondents for instructional supplies violates the Fourteenth Amendment to the United States Constitution, we note only that that argument was not raised at Special Term and therefore may not properly be considered on appeal (*Matter of Pangburn* v. *Plummer*,

36 A D 2d 883). Accordingly, we express no opinion as to that contention. Munder, Acting P. J., Martuscello, Latham, Gulotta and Christ, JJ., concur.