OPINION OF THE COURT
Memorandum.
Judgment affirmed, without costs.
The issue presented on this appeal is whether a school district may recover the cost of pupil instructional supplies from the parents of its students.
The annual 1976-1977 budget of the plaintiff Union Free School District of the Tarrytowns, which included an allocation of $86,419 for student instructional supplies, was twice voted down by residents of the district. A subsequent proposition authorizing a tax levy to fund the purchase of these supplies was also rejected. Plaintiff then adopted a contingency budget (Education Law, § 2023). Thereafter, pursuant to the guidelines of the State Department of Education, plaintiff purchased the supplies and billed the parents of each student for a prorated share of the cost, which amounted to $19 per pupil.
When the defendants, parents of students in plaintiff’s district, refused to pay, this action was commenced. Plaintiff contended that the suit was authorized under the guidelines of the State Department of Education promulgated to aid school districts in dealing with contingency budgets. In the absence of voter approval, these guidelines conclude that the responsibility for furnishing student supplies (which are not considered "ordinary contingent expenses”) rests with the parents and recommended that the school district should purchase the supplies and bill the parents for their share of the cost. At the trial, only a partial list of the supplies was admitted in evidence. The items under consideration include typewriter ribbons, tools, chemicals, slides, science equipment, drumsticks and tether balls, and plaintiff stated they were distributed to the children in the district whether or not the parents had made the payment demanded.
The trial court dismissed the complaint upon the ground that no "sale” had occurred, there was no meeting of the minds and no showing that the parties intended to make a contract. The court also noted that the bill and covering letter *55 sent to the defendants failed to identify the subject matter of the proposed contract.
Upon this appeal, the plaintiff argues the maintenance of its action is authorized by subdivision 5 of section 701 of the Education Law which permits a school district to purchase supplies and "sell” them to the pupils, and that the court below erred in holding the law of sales is applicable in construing the statute on which the action is founded. It also claims the defendants are liable on the theory of "necessaries.”
The question of whether school boards may purchase student supplies and assess the parents for such expense is arising with greater frequency as resistance to increased school taxes stiffens. The basic issue is whether student instructional supplies may be considered "ordinary contingent expenses” so as to be included in the austerity budget without voter approval. It is undisputed that if the items were in the nature of ordinary contingent expenses, they would be fundable by the taxpayers of the district, and the instant action would not be necessary (Education Law, § 2023). However, on May 1, 1976, the office of the Assistant Commissioner of Educational Finance and Management Services of the State Department of Education restated the rule that instructional supplies for students were not ordinary contingent expenses (7 Ed Dept Rep 153 [Formal Opn of Counsel No. 213]) and so the issue then arises of how to pay for their cost.
Historically, neither textbooks nor instructional supplies were considered contingent expenses that could be furnished without voter approval. The authority to purchase textbooks and supplies was first incorporated in the Education Law by chapter 379 of the Laws of 1918 (Education Law, § 670, subd 3). This provision (which later became subdivision 2 of section 701 of the Education Law) was retained in the law, without change, until 1965. In that year, subdivision 2 was amended to mandate the furnishing of free textbooks to all children in both public and private schools enrolled in grades 7 to 12 (L 1965, ch 320, § 2). This amendment paralleled the passage of the Elementary and Secondary Education Act of 1965 (US Code, tit 20, § 821 et seq.). Title II of this act established a program of Federal grants for the acquisition of school library resources, textbooks and other printed instructional material for use by teachers and children in public and private schools. The amendment to section 701 of the Education Law insured *56 the State’s right of participation in the Federal grants (US Code, tit 20, § 823, subd [a], par [3], cl [B]; see, also, 1965 McKinney’s Session Laws of NY, p 2056; Flast v Cohen, 392 US 83, 86-87). Although the 1965 amendment deleted from subdivision 2 the provisions relating to the purchase of supplies, they were re-enacted as subdivision 3 and included the power to lend supplies to students (L 1965, ch 320, § 2). (This subdivision was later renumbered as subdivision 5 of section 701 [L 1966, ch 795].) The separation of provisions relating to supplies from that concerning textbooks[1] thus continued the traditional policy of subjecting the purchase of supplies to voter approval.
This viewpoint is supported by the decision reached by the Appellate Division, Second Judicial Department, in Reiss v Abramowitz (39 AD2d 916). The court there, although recognizing the desirability of providing supplies free of charge, held they were not (p 917) "ordinary contingent expenses” and stated: "Clearly, the phrase 'ordinary contingent expenses’ was intended to limit expenditures under an austerity budget to those of a greater necessity than instructional supplies for students.” (Contra Board of Educ. v Nyquist, 92 Misc 2d 43.) The opinion in Reiss noted that, "In short, we feel that petitioner’s claim that certain instructional supplies should be considered 'ordinary contingent expenses,’ and therefore exempt from parental funding, tenders an issue which is particularly within the province of the commissioner to determine.” (Reiss v Abramowitz, supra, p 917). The commissioner had continuously ruled that responsibility for determining what constitutes an ordinary contingent expense lies in the first instance with the board of education (Matter of Epler v Board of Educ., 13 Ed Dept Rep 114).
The most recent decision by the Commissioner of Education, issued subsequent to the determination of the court below and during the pendency of this appeal, found no authority exists under subdivision 5 of section 701 of the Education Law for the imposition of a charge upon parents unwilling to purchase items from a school board (Matter of Hasslacher v Board of Educ., 16 Ed Dept Rep 434, No. 9459 [1977]). In so ruling, the commissioner relied on the Supreme Court decision of Sodus *57 Cent School Dist. v Rhine (Wayne County, Wagner, J., Dec. 23, 1976). In Sodus, as here, the school district sued parents who refused to pay charges assessed for school supplies and the court held that, since there was no agreement, expressed or implied, between the parties, there was no sale within the purview of subdivision 5 of section 701 of the Education Law. The trial court, in the case at bar, made a similar finding.
In our opinion, the conclusion reached on the basis of the law of contracts is unassailable in the absence of proof that the word "sell” in subdivision 5 of section 701 possesses a special connotation apart from its ordinary meaning. Here, no agreement existed and none may be implied simply from the circumstance that plaintiff has made the supplies available to all students. Plaintiff failed to adduce any proof that title to the items was conveyed to the students and the broad range of the items readily demonstrates that no one student could make use of all the materials. The imposition of a charge on the parents for supplies totally unrelated to the course of study being pursued by their children is unwarranted. This court is also unaware of any theory which would hold the members of a group liable for the purchase price of articles where they are not the direct recipients or beneficiaries. For the same reason, the action cannot be maintained on the theory the transaction involved necessaries.
We note that plaintiff labeled approximately $54,000 of purchases as "instructional supplies” without offering proof to support this classification or even identifying all the items. It is apparent that the Legislature, in giving school boards the power to purchase supplies, and either rent, sell or loan them, was not endeavoring to categorize all articles as noncontingent expenses. Certainly, there is a decided difference between pencils and notebooks, and chemicals and cultures. The arbitrary characterization of myriad items as instructional supplies without regard to whether these articles are essential and necessary for satisfactory completion of a particular curriculum results in the shifting of the burden of funding from the taxpayers of the district to the individual parents of the students. We hold a forced sale upon an unwilling parent is (a) not authorized by subdivision 5 of section 701 of the Education Law, and (b) would be violative of section 1 of article XI of the New York State Constitution, which provides for the maintenance and support of "free common schools, wherein all the children of this state may be educated” (cf. Education Law, *58 §3202, subd 1; Board of Educ. v Nyquist, 92 Misc 2d 43, supra). The constitutional provision is direct and simple and does not permit a charge to be forcibly levied on parents for instructional supplies essential to the maintenance of a basic educational curriculum (cf. Matter of Epler v Board of Educ., 13 Ed Dept Rep 114, 116, supra). In our opinion, the holding in Reiss v Abramowitz is not to the contrary.
In conclusion, we hold that there is no statutory authority which supports the action of the plaintiff. If such supplies are necessary and essential to plaintiff’s instruction of the students, it would appear that they should be considered ordinary contingent expenses. However, in view of the controversy in the case at bar, the determination is more properly made by the person charged with administering the educational system. Under section 2024 of the Education Law, the Commissioner of Education is specifically empowered to determine what are ordinary contingent expenses, and such questions should properly be referred to him in the first instance (see Education Law, § 310, subd 7). Resort to the court for a resolution of that issue is disruptive of the statutory scheme, and an unwarranted intrusion on the powers delegated by the Legislature to the commissioner.
Concur: Farley, P. J., Pittoni and Silberman, JJ.

. Section 703 of the Education Law, after its amendment in 1965, still required voter approval for the furnishing of textbooks to students enrolled in grades 1 to 6, but was repealed (L 1973, ch 587, § 17), thus making free textbooks available to all students.